# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2285

_____

United States of America,

        Plaintiff/Appellee,

v.

Reynaldo Tovar-Valdivia,

        Defendant/Appellant.

Appeal from the United States
District Court for the Western
District of Missouri.

[PUBLISHED]

_____

Submitted: September 14, 1999
Filed: October 15, 1999

_____

Before RICHARD S. ARNOLD, BRIGHT and LOKEN, Circuit Judges.

_____

PER CURIAM.

Appellant Reynaldo Tovar-Valdivia (Tovar) was charged with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841. Tovar filed a motion to suppress evidence seized from his person. The district court denied the motion. Tovar entered a conditional guilty plea, reserving his right to this appeal. On Tovar's timely appeal, we now reverse.

## I. BACKGROUND

On April 6, 1998, Tovar arrived in Kansas City, Missouri, from Los Angeles on a Greyhound Bus. An officer with the Kansas City Police Department, assigned to interdiction duties at the bus station where the officer had conducted several drug seizures, witnessed Tovar exit the bus and leave the bus terminal. The officer's attention was drawn to Tovar because he had just come off the bus coming from Los Angeles, a source city for narcotics, and Tovar appeared to be in a hurry. The officer also testified that he noticed Tovar because he was carrying a new bag, and, in the officer's experience, most narcotics are carried in new bags.

While Tovar talked with a cab driver, the officer approached him and identified himself as a police officer. The officer asked to see a bus ticket, which Tovar produced, and asked if he could search Tovar's bag, which Tovar said he may. No contraband was found in the bag. As the officer searched the bag, however, he noticed bulges under Tovar's shirt and testified that he was concerned they were weapons. The officer felt the bulges and knew only that they were not part of Tovar's anatomy. He then summoned another officer whereupon the officers handcuffed Tovar, unbuttoned his shirt and found narcotics strapped to his body. The officers placed Tovar under arrest, took him to a confined room in back of the bus station, took pictures of the bags strapped to his body, and read him his Miranda rights.

The appellant was charged by indictment with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). After a suppression hearing, the magistrate judge made the following findings and conclusions: (1) the contact between the officer and Tovar was initially consensual; (2) the officer had reasonable suspicion that the defendant was engaged in criminal activity; (3) the officer acted reasonably in conducting a pat-down search of Tovar; and (4) Tovar's arrest after the narcotics were discovered was proper and based on probable cause. The district court entered an order denying Tovar's motion to suppress. He entered a conditional plea.

Tovar appeals arguing that the district court erred in failing to sustain his motion to suppress the evidence seized from him at the time of his arrest.

## II. DISCUSSION

When determining whether probable cause exists to make a warrantless arrest, we review the historical facts supporting probable cause for clear error and review the district court's determination of probable cause de novo. See Ornelas v. United States, 517 U.S. 690, 699-70 (1996); United States v. Scott, 91 F.3d 1058, 1061 (8th Cir. 1996); United States v. Ball, 90 F.3d 260, 262 (8th Cir. 1996).

The issues before us are whether the police arrested Tovar before searching his body and whether the police had probable cause to make that arrest. Whether a particular seizure amounted to an arrest is a question of law that this court reviews de novo. See United States v. Bloomfield, 40 F.3d 910, 916 (8th Cir. 1994).

The Supreme Court has held that a seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave . . . ." United States v. Mendenhall, 446 U.S. 544, 545 (1980). This circuit has stated that "[p]olice 'seize' a person by engaging in conduct that would make a reasonable person feel he was not free to leave." Mettler v. Whitledge, 165 F.3d 1197, 1203 (8th Cir. 1999).

Circumstances indicative of a seizure may include a "'threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, . . . or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" United States v. Galvan-Muro, 141 F.3d 904, 906 (8th Cir. 1998) (quoting United States v. White, 81 F.3d. 775, 779 (8th Cir. 1996)). In addition, when an officer, by means of physical force or show of authority,

has in some way restrained the liberty of a citizen the court may conclude that a "seizure" has occurred. See United States v. Roby, 122 F.3d 1120 (8th Cir. 1997).

We first consider whether the police seizure of Tovar amounted to an arrest. We have little trouble determining that the officer placed Tovar under arrest when he placed the handcuffs on him. At that moment, Tovar was restrained and, by any reasonable standard, was not free to leave.

Having found that Tovar was "seized" for Fourth Amendment purposes, the next issue becomes whether the arrest of Tovar, at the time he was cuffed, was supported by probable cause. Under the Fourth Amendment, probable cause justifies a seizure. See United States v. Whren, 517 U.S. 806 (1996). Probable cause for a warrantless arrest "depends . . . upon whether, at the moment the arrest was made, . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). See also Kuehl v. Burtis, 173 F.3d 646 (8th Cir. 1999); United States v. Neumann, 585 F.2d 355 (8th Cir. 1978).

After reviewing the record, we conclude that the officer did not have probable cause to arrest Tovar. At the suppression hearing, the officer testified that three factors brought Tovar to his attention: 1) he was arriving from Los Angeles, a source city for narcotics; 2) he appeared to be in a hurry; and 3) he carried a new bag. The officer approached Tovar, and, after some general questioning, asked if he could search his bag. While searching the bag, the officer looked up and saw bulges on the sides of Tovar's torso. He testified that when he saw the bulges, he did not know what they were. The officer touched the bulges on the sides of Tovar to determine whether they were weapons. The officer testified that after touching the bulges, he still did not know what the bulges were; all he knew was that they were not a part of Tovar's anatomy. At that moment, the officer placed Tovar under arrest. Taken together, these facts do

-4-

not provide a reasonable belief that Tovar had committed or was committing an offense. The bulges could have been bandages about his body, a money belt worn about his ribs, or any number of non-contraband items. The officer's equivocal testimony clearly establishes the invalidity of the arrest for want of probable cause.[1]

Accordingly, we vacate the conviction and sentence and remand to the District Court for such proceedings as may be consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[1]The government argued this as a <u>Terry</u> stop. The government reasons that the officer had reasonable suspicion to stop Tovar (a form of seizure); Tovar consented to a search of his bag; during a <u>Terry</u> stop, a police officer may frisk for weapons to protect his safety; the officer thought the bulge in Tovar's clothing might be a weapon; therefore, the pat-down frisk and discovery of contraband was constitutional. The government's position is unsustainable. <u>Terry</u> does not authorize a pat-down for weapons after search of the bag dispelled the officer's reasonable suspicion; nor does <u>Terry</u> authorize the police officer to handcuff and search an individual after the initial pat-down of the bulge did not confirm the existence of a weapon or contraband.