For the above reasons, I will grant the Klan's motion for summary judgment and enter a declaratory judgment in its favor.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for summary judgment [# 35] is granted.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment [# 39] is denied.

A separate declaratory judgment in accord with this Memorandum and Order is entered this same date.

### DECLARATORY JUDGMENT

In accordance with the Memorandum and Order entered this same date,

**IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that plaintiffs shall have summary judgment.

**IT IS FURTHER DECLARED** that defendants are hereby enjoined from denying the application of the Knights of the Ku Klux Klan, Realm of Missouri, Unit 188, to participate in the Adopt–A–Highway program on the basis of Mo.Code Reg. Ann. tit. 7, § 10–14.030.

**UNITED STATES of America, Plaintiff,**

v.

**Peter J. CUSTER, Defendant.**

**No. 8:03CR119.**

United States District Court, D. Nebraska.

Sept. 10, 2003.

Robert F. Kokrda, Assistant United States Attorney–Omaha Omaha, NE, for Plaintiff.

Karen M. Shanahan, Federal Public Defender's Office–Omaha Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

This matter is before the court on the objection of defendant Peter J. Custer,

Filing No. 36, to the report and recommendation of the magistrate, Filing No. 35, in which the magistrate recommends that the court deny Custer's motion to suppress evidence seized during a warrantless search of his residence at 6929 Pratt Street in Omaha, Nebraska. *See* Filing No. 20. The court finds defendant's objections to the magistrate's report and recommendation should be sustained, and thus the court will not adopt the magistrate's report and recommendation.

The defendant is charged with possession of firearms after a previous conviction of misdemeanor domestic violence in violation of 18 U.S.C. § 922(g)(9). In his motion to suppress, defendant contends the protective sweep of his residence following his arrest was conducted without consent and was not justified by exigent circumstances. *See* Filing No. 21. Initially, the government asserted the search was performed pursuant to voluntary consent from Mrs. Custer. *See* Filing No. 23. Subsequently, the government filed a supplemental brief contending that the search is valid under the protective sweep exception to the warrant requirement. *See* Filing No. 29.

Under 28 U.S.C. § 636(b)(1)(C), the court makes a de novo determination of those portions of the report or recommendations to which the parties object. *United ed States v. Lothridge*, 324 F.3d 599, 600–01 (8th Cir.2003). Failure to engage in the required de novo review is reversible error because the exercise of ultimate judicial authority by other than Article III officers affects both individual and structural constitutional protections. *Id.* at 599–600. The court has conducted a careful de novo review pursuant to 28 U.S.C. § 636(b)(1)(A) of the transcript of the proceeding, Filing No. 34; defendant's brief in support of the motion, Filing No. 21; both government briefs in opposition to the motion, Filing Nos. 23 and 29; the magistrate's report and recommendation, Filing No. 35; and defendant's objection thereto, Filing No. 36.

## I. Background

The court generally adopts the facts as set forth in the magistrate's report, but disagrees with the application of the law to those facts. Briefly, the evidence adduced at the hearing shows that 911 dispatch received a call from Michelle Custer at around 9:00 p.m. on January 3, 2003. The dispatcher initially advised that the 911 operator received a domestic violence call from Mrs. Custer, who reported that her husband was armed with a shotgun. Officers Johnson, Doane, Turco, and Heacy were dispatched to the residence to investigate the domestic disturbance. In route they received another dispatch relaying information about methamphetamine use at the address. The officers parked approximately one block from the residence and approached the house on foot. As the officers approached, a woman carrying a baby ran toward Officer Doane. Officer Doane then directed the woman, later identified as Michelle Custer, to Officer Johnson, who escorted her back to Johnson's patrol car. In route to the patrol car, Officer Johnson took Michelle Custer behind a fence to talk to her. Officer Johnson asked her if there was anyone else in the house, to which Michelle Custer replied, "No, I don't think so, I don't know." When asked if there were any guns in the house, Michelle Custer replied that there was a gun in the basement. On gathering this information, Officer Johnson radioed the information, "the shotgun is in the basement," to the other officers and proceeded to take Mrs. Custer to the patrol car.

Officer Doane walked up to the front of the house, while Officers Heacy and Turco went around to the back of the house. As

Officer Doane approached the house, he saw a shadow inside and requested that the person come outside. The person, later identified as Peter Custer, responded that he would have to come out of the garage. Mr. Custer came out of the garage door and was secured by the officers. Officer Doane advised that the suspect was in custody and they were going to clear the house. Officers Doane and Turco then entered the house, performed the search, and found the weapons at issue.

## II. Discussion

### A. Consent

In their first brief in response to Custer's motion, the government claimed Mrs. Custer voluntarily consented to the search of the residence. *See* Filing No. 23. Based on the content of their supplemental brief, the court assumes the government abandons that position, and claims the search is valid solely under the protective sweep and exigency exception to the warrant requirement. *See* Filing No. 29. Furthermore, the court finds no basis in the record to support voluntary consent.

### B. Protective Sweep

 The Fourth Amendment has drawn a firm line at the entrance to the house. *United States v. Vance*, 53 F.3d 220, 221–22 (8th Cir.1995). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no. *Kyllo v. United States*, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). Thus, law enforcement officials may not enter a house without a search warrant or exigent circumstances. *Vance*, 53 F.3d at 221.

 Exigent circumstances exist when law enforcement officials have a "legitimate concern for the safety" of themselves or others. *Id.* The exigent circumstances exception to the warrant requirement is narrowly drawn. *United States v. Ball*, 90 F.3d 260, 262 (8th Cir. 1996). The exception justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed. *Id.* The government bears the burden of proving exigent circumstances. *United States v. Walsh*, 299 F.3d 729, 733 (8th Cir.2002).

 Under *Maryland v. Buie*, 494 U.S. 325, 337, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), a "protective sweep" is justified in connection with an in-home arrest if an officer reasonably believes that the area to be swept harbors an individual posing a danger to those at the arrest scene. *See, e.g., United States v. Boyd*, 180 F.3d 967, 974 (8th Cir.1999) (finding a "quick and limited" protective sweep lawful when confined to spaces large enough to conceal a person); *Walsh*, 299 F.3d at 733 (finding a search of a storage shed housing an active methamphetamine lab lawful as a protective sweep justified by the exigent circumstance of safety). This type of search is limited to protecting the arresting officers when that is justified by the circumstances. *Buie*, 494 U.S. at 335, 110 S.Ct. 1093. It is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Id.* The officer's concern for his safety "must be based on specific and articulable facts." *United States v. Cunningham*, 133 F.3d 1070, 1073 (8th Cir.1998).

 A *Buie* protective sweep is divided into two categories. "First, during a search incident to an arrest occurring inside a home, officers may as a precaution-

ary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *United States v. Colbert,* 76 F.3d 773, 776 (6th Cir.1996). "Second, officers may conduct a search more pervasive in scope when they have articulable facts which, taken together with the rational inference from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* Mr. Custer was secured by the officers on the outside of the house after he emerged from the garage door. Ordinarily, the arrest of a person outside a residence does not justify a warrantless search of the residence itself. *See Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685, (1969); *United States v. De-Buse,* 289 F.3d 1072, 1073 (8th Cir.2002). Courts have extended the *Buie* principles to protective sweeps involving an arrest outside a home only where there is a specific, reasonable basis for believing there is a danger from a person inside the residence. *United States v. Henry,* 48 F.3d 1282, 1284 (D.C.Cir.1995). *See also United States v. Kimmons,* 965 F.2d 1001, 1004 (11th Cir.1992); *United States v. Oguns,* 921 F.2d 442, 446–447 (2d Cir.1990); *United States v. Hoyos,* 892 F.2d 1387, 1397 (9th Cir.1989); *United States v. Jackson,* 700 F.2d 181, 189 (5th Cir.1983). "The officers' exact location does not change the nature of the appropriate inquiry: Did articulable facts exist that would lead a reasonably prudent officer to believe a sweep was required to protect the safety of those on the arrest scene?" *Id.* An officer's awareness that an arrestee had a previous weapons conviction and could be dangerous would not in itself justify a protective sweep without an objective basis for officers to fear for their safety after an arrest. *See Henry,* 48 F.3d at 1284 (noting that

once arrestee is in custody, he no longer poses a threat to the police).

■ The court is unable to find an articulated, reasonable basis for the officers' concern for safety after Mr. Custer was in custody. The dispatcher's initial call to the responding officers spoke only of "Michelle" and "the husband." *See* Exhibit 2 (call dispatched by dispatcher). When the officers approached the house, Michelle Custer approached carrying a baby. Officer Johnson removed her from the front of the home and asked her if there was anyone else inside the house, to which she replied, "No, I don't think so, I don't know." After this brief interview, Officer Johnson only relayed information to the other officers about the whereabouts of the shotgun. *See* Exhibit 2 (Johnson advises units at scene that shotgun is in the basement). No mention was made to the other officers about any possibility that other parties were in the house. Officer Johnson accompanied Mrs. Custer back to the cruiser while the other officers approached the house. Mr. Custer soon emerged from the garage and was placed in custody.

■ Once Mr. Custer was under arrest, a protective sweep of the residence would be justified only if there were suspicion of attack by a third party. *See United States v. Colbert,* 76 F.3d 773, 777 (6th Cir.1996) (facts that may justify a protective sweep are those giving rise to a suspicion of danger by a third party, not the dangerousness of the arrested individual); *United States v. Akrawi,* 920 F.2d 418, 420 (6th Cir.1990) (sweep requires an articulate basis for a belief that a third party poses a threat); *United States v. Tisdale,* 921 F.2d 1095, 1097 (10th Cir.1990) ("[T]he danger which justifies a protective sweep comes from the possible presence of other armed and dangerous persons in the vicinity."). Furthermore, a protective sweep cannot be justified by mere speculation

that another person might be inside the house. *Colbert,* 76 F.3d at 778 (lack of information cannot provide an articulable basis upon which to justify a protective sweep); *United States v. Delgadillo–Velasquez,* 856 F.2d 1292, 1298 (9th Cir.1988) (officers must have more than a subjective belief that danger exists).

After Mr. Custer was taken into custody, all parties were accounted for. The only intimation that any other person might have been involved was the vague statement, "No, I don't think so, I don't know," made to Officer Johnson. This statement was never conveyed to the other officers and cannot be the basis for an inference that anyone other than Mr. Custer was inside the residence. The officers who conducted the search had no reason whatsoever to suspect that there was anyone else inside the residence.

Officers Turco and Doane testified that it is regular policy to "clear the house" to ensure the safety of officers and civilians. Such a policy contravenes the basic principles of Fourth Amendment jurisprudence. *See Chimel v. California,* 395 U.S. at 763, 89 S.Ct. 2034 (1969) (only authorizing search of arrestee and his immediate area within his control as lawful search incident to arrest); *United States v. DeBuse,* 289 F.3d 1072, 1073 (8th Cir.2002) (arrest of a person outside of a residence does not justify a warrantless search of the residence; an exception is when law enforcement officer accompanies the arrestee into his residence to obtain clothing or identification).

Without a warrant, the government is required to show that exigent circumstances exist. The government has failed to carry its burden. Without any reason to suspect that there was anyone else in the house, any exigency was eradicated when Mr. Custer was placed under arrest. At that point, the officers had no reason to be concerned for their safety or the safety of others and thus no justification for the warrantless entry into and search of the residence. Accordingly, the court finds the search violated Custer's rights under the Fourth Amendment and his motion to suppress the evidence seized in the search should be granted.

Accordingly, IT IS ORDERED:

1. The defendant's objection, Filing No. 36, to the report and recommendation, Filing No. 35, is sustained;

2. The report and recommendation of the magistrate, Filing No. 35, is adopted only with respect to facts stated therein and is rejected in all other respects;

3. The defendant's motion to suppress, Filing No. 20, is sustained.