KELLY, Circuit Judge,
concurring in part and dissenting in part.
I respectfully dissent from Part II.B of the court’s opinion. In determining whether an official is entitled to qualified immunity, we must view the facts “in the light most favorable to the party seeking damages” — here, the Brossarts. McKenney v. Harrison, 635 F.3d 354, 358 (8th Cir. 2011). So construed, the facts are that Thomas Brossart was home on the evening of June 23, 2011, when law enforcement entered the Brossarts’ property. Thomas and his two brothers went outside with firearms, and Thomas told the officers to leave because they were trespassing. Thomas did not know the officers were there to serve a search warrant. The encounter ended in a standoff, and the officers left the property. No shots were fired.
*629 The next day, law enforcement returned to the Brossarts’ property. Thomas (on a three-wheeler) and his brothers (on a tractor) approached law enforcement, who were near the Brossarts’ silo. Neither Thomas nor his brothers were carrying firearms. All three brothers were then arrested, handcuffed, and ordered to lay on the ground at gunpoint. Officer Braathen and another officer carried Thomas to a police car because he would not walk on his own, and placed him in the back seat. Thomas remained handcuffed. Once Thomas was seated in the car, Braathen told Thomas to “move over.” Thomas moved over a couple of inches; he did not know that the officers needed room to place both of his brothers in the back seat with him. Without warning, Braathen tased Thomas on his left leg for approximately five seconds, resulting in a slight burn. Another deputy then pulled Thomas to the middle of the back seat. Thomas said: “This is my property and I don’t agree to the sale.”
Viewed in the light most favorable to Thomas, Braathen used excessive force. While the events of the prior evening are relevant to whether the force used against Thomas was excessive, see Graham, 490 U.S. at 396, 109 S.Ct. 1865 (reasonableness of use of force under Fourth Amendment “requires careful attention to the facts and circumstances of each particular case”), equally as important are the circumstances immediately surrounding the arrest, including “whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight,” id.; cf. County of Los Angeles v. Mendez, — U.S. -, 137 S.Ct. 1539, 1546-48, — L.Ed.2d - (2017) (officers’ prior Fourth Amendment violation cannot render a subsequent reasonable use of force unreasonable). Thomas may have earlier posed a threat to officers, but at the time he was tased, he was handcuffed and secured in the back seat of a police car. See Chambers v. Pennycook, 641 F.3d 898, 907 (8th Cir. 2011) (kicking restrained and non-resisting subject found objectively unreasonable). Multiple officers were at the scene, including at least two in the immediate vicinity of the car. See Brown, 574 F.3d at 498 (finding force less justified where multiple officers were present). There is no evidence that Thomas made any aggressive movements or verbal threats toward Braathen.when he was getting into or while he was seated in the police car. See Shekleton, 677 F.3d at 366 (excessive force when officer tased “an unarmed suspected misdemeanant, who did not resist arrest, did not threaten the officer, did not attempt to run from him, and did not behave aggressively towards him”); Bryan v. MacPherson, 630 F.3d 805, 826-27 (9th Cir. 2010) (suspect yelling and standing fifteen to twenty-five feet away did not pose immediate threat); Brown, 574 F.3d at 497 (officer’s testimony that plaintiff may have used glass tumbler as weapon insufficient to establish immediate danger when suspect did not reach for glass or threaten officers).
Furthermore, according to Thomas, Braathen told him to “move over,” and Thomas — still handcuffed — did so by shifting a couple of inches, not understanding that he was expected to move even further. Such actions, viewed in the light most favorable to Thomas, do not constitute resistance. See Peterson v. Kopp, 754 F.3d 594, 597, 600 (8th Cir. 2014) (arguing with officer and talking back held to not be resisting); Brown, 574 F.3d at 498 (refusing to hang up phone not resisting arrest). And, according to Thomas, Braathen gave no warning before deploying his taser. See Smith v. Kansas City Police Dep’t, 586 F.3d 576, 581 (8th Cir. 2009) (excessive force when plaintiff was forcibly removed from his home before having the opportu *630 nity to comply with commands); Brown, 574 F.3d at 497 (summary judgment not appropriate where evidence presented jury question as to whether officer warned plaintiff that she would be tased). Similarly, Braathen did not tell Thomas why he needed to move, and another officer was able to successfully pull Thomas into the middle seat. See Tatum v. Robinson, 858 F.3d 544, 547-48, 2017 WL 2324709, at *2 (8th Cir. 2017) (though use of some degree of force may have been reasonable, use of taser was not). Though Braathen contends that Thomas refused to comply with his order and that Braathen warned Thomas that he would be tased, those assertions are directly contradicted by Thomas’ deposition testimony. “This court may not resolve genuine issues of material fact in [Braathen’s] favor at the summary judgment stage.” Id. at 552, 2017 WL 2324709, at *6.
Because the facts here establish a genuine issue of material fact as to whether officers used excessive force during Thomas’ arrest and demonstrate that Thomas’ right to be free from this excessive force was clearly established at the time of the events, I would reverse the grant of summary judgment on Thomas Brossart’s excessive force claim and remand for further proceedings. I concur in the court’s opinion in all other respects.